(Decided 19th March, 1890.)

JOHN W. S. COCHRANE *vs.* WILL S. BRIDENDOLPH and BENJAMIN A. RICHMOND, Trustees in Insolvency of CHARLES W. HOWELL.

*Insolvency—Right of Trustees—Compromise—Obligation of Insolvent.*

Proof that the creditors of an insolvent agreed for fifty per cent. of his indebtedness, paid in cash, and his real estate, to release the trustees in insolvency and the insolvent from all claims, and permit a debtor of the insolvent to retain certain money in his hands belonging to the insolvent estate, will not prevent a recovery by the trustees against such debtor, as by force of the statute, the trustees are invested with the entire estate of the insolvent, subject to legal exemptions, and the creditors have no right to interfere with it in any manner.

Section 30 of Article 47, of the Code, requires the insolvent to surrender his property to the trustees, and makes it the duty of the Court to enforce the surrender by fine and imprisonment,

and the trustees have no right to make any bargain with the insolvent which should relieve him from his legal duty.

The trustees in insolvency filed their report in the insolvent Court stating that the insolvent, having refused to deliver to them a large sum of money that he had in his possession, had been committed to jail for contempt of Court; that he had agreed to turn over to them a sum of money, being fifty per cent. of his then ascertainable indebtedness, provided they would not sell his real estate for two years, and would give him the opportunity of redeeming the same in the meantime by paying the remaining fifty per cent.; that the creditors assented to this arrangement; that the insolvent had purged his contempt, and paid to the trustees a certain sum of money; that certain parties proposed to buy the real estate in Alleghany County, and had agreed to give the insolvent two years in which to redeem it; that it would be for the interest of the creditors to make the sale and have a speedy settlement; and that the creditors were willing that the sale should be made.   The sale was made on the terms proposed and it was ratified by the Court.   HELD:

That there was nothing in the report which would excuse the insolvent from the obligation, imposed on him by statute, of surrendering his property to the trustees.

APPEAL from the Circuit Court for Alleghany County.

The case is stated in the opinion of the Court.

*First Exception.*—This exception was taken to the exclusion of certain testimony offered by the defendant, which need not be stated.

*Second Exception.*—Set out in the opinion of the Court.

*Third Exception.*—This exception was taken to the rejection of certain evidence offered by the defendant, which it is unnecessary to report.

*Fourth Exception.*—The plaintiffs offered two prayers as follows :

1. That if the jury find from the evidence that the defendant received the sum of $263.00 from the sale of cer-

Cochrane, *et al. vs.* Bridendolph and Richmond.

tain cattle of Charles W. Howell, placed in defendant's hands by Howell under the deed of trust offered in evidence, and that afterward, on the second day of February, 1889, a petition in insolvency was filed against said Howell in this Court in No. 1471 insolvents, by one of his creditors, and that upon said petition said Howell was adjudicated an insolvent by said Court on the 15th day of February, 1889, and that thereafter the plaintiffs were elected the permanent trustees in insolvency of said Howell under said proceedings, and gave bond and qualified, and still are such trustees, and further find that the defendant has not paid over any part of said money to said trustees, but still retains the same, then the plaintiffs are entitled to recover in this action the balance of the same, if any, which the jury may find still remains in defendant's hands, after deducting therefrom the amount of any debt or debts (if any) which the jury may find had accrued, or become owing from the said Howell to defendant before the filing of said petition in insolvency, together with such amount of interest on such balance, if any, which the jury in their discretion may see fit to allow.

2. That the jury cannot allow the defendant, as a set-off in this case, for the value of any services rendered, or expenses incurred by him for or on account of said Howell, after the filing of the petition in insolvency in said insolvent case, on the 2nd day of February, 1889.

The defendant offered the following prayer :

That if the jury shall find from the evidence that Howell executed the deed of trust in this case, and that the insolvent proceedings were had and the deed of trust set aside, so far as the creditors were concerned, and afterwards, the creditors and the trustees agreed between themselves that they would accept the sum of fifty cents, in cash, on the debts due from Howell, and take the real estate to hold the same for two years as a pledge that

said Howell would pay the balance of his indebtedness, and the said Howell paid over to the trustees in pursuance of that agreement, fifty per cent. of his indebtedness, and turned over to the trustees his real estate, to be held by them in trust for the period of two years, conditioned on the payment of the balance of said indebtedness, and the said trustees and creditors did accept said cash and said real estate in full of said indebtedness ; and afterwards the said trustees and the creditors and Howell, agreed with Lloyd Lowndes and Wm. R. Percy, that if they would pay the sum of $3500, in cash, for the real estate, they would accept the same in full payment of their indebtedness instead of waiting two years for the balance due them, and the said Lowndes and Percy paid over the said money as agreed, and the trustees reported said transactions to this Court, and the same were ratified and the said money distributed and duly paid out to the several creditors of Howell in pursuance of said agreement, then that said transactions operate as a discharge of the indebtedness of said Howell, and the defendant is entitled to retain in his hands any money he may have had at the date of the settlement aforesaid, in excess of said fifty cents on the dollar of his indebtedness, provided they further find he had in his hands any money above what he is entitled to retain under the rulings of the Court, for services prior to the filing of the insolvent proceedings.

The defendant objected generally to the plaintiffs' prayers, and the plaintiffs objected generally to the defendant's prayer, and also objected and excepted specially to the granting of the same for want of evidence in certain particulars, to wit :

Because there is no proof in the case " that the said trustees and creditors did accept said cash and said real estate in full of said indebtedness ; and afterwards the said trustees and the creditors of Howell agreed with

Cochrane, *et al. vs.* Bridendolph and Richmond.

Lloyd Lowndes and Wm. R. Percy, that if they would pay the sum of $3500 in cash for the real estate, they would accept the same in full payment of their indebtedness, instead of waiting two years for the balance due them, and the said Lowndes and Percy paid over the said money as agreed, and the trustees reported said transaction to this Court, and the same was ratified," or of any of said facts as set out in said prayer.

The Court (HOFFMAN, J.) granted the plaintiffs' prayers, and rejected the defendant's prayer. To this ruling of the Court the defendant excepted, and the verdict and judgment being for the plaintiffs, he appealed.

The cause was argued before ALVEY, C. J., ROBINSON, IRVING, BRYAN, and MCSHERRY, J.

*John W. S. Cochrane,* for himself.

*David W. Sloan,* for the appellees.

BRYAN, J., delivered the opinion of the Court.

Bridendolph and Richmond were permanent trustees in insolvency of Howell, who had been adjudicated an insolvent debtor. They sued Cochrane for money in his hands alleged to belong to the insolvent estate. The money was the proceeds of the sale of certain cattle which belonged to Howell, previously to the adjudication of insolvency ; but it was alleged by the defendant that he had become entitled to it by virtue of an agreement which is stated in the record with some variety of form. We shall, however, consider it under the aspects most favorable to the defendant, so as to give him the advantage of every hypothesis which the case may legitimately authorize. In the second bill of exceptions, it is stated that the defendant offered to prove that at a meeting of Howell and his creditors and the trustees,

the creditors agreed for the sum of fifty per cent. of Howell's indebtedness, paid in cash, and his real estate, that they would release the trustees and Howell, and that the agreement was to be in full of all claims against Howell, and a final settlement of all proceedings against him in the insolvent case, and that they knew that there was a surplus in the hands of the defendant, and agreed that he should retain it. By force of the statute these trustees were invested with the entire estate of the insolvent, subject, of course, to the legal exemptions ; they held it for the benefit of the creditors, among whom it was their duty to make distribution at the proper time, and in due proportions. But in the meantime, the creditors were not entitled to interfere with it in any way whatever. The statute did not authorize them to make any composition with the insolvent, or to release him in any degree from the obligation which the law imposed upon him to surrender to the trustees all his property except that portion within the statutory exemptions. Nor had the trustees a right to make any bargain with the insolvent which should relieve him from his legal duty. The statute, in the most explicit terms, requires the insolvent to surrender his property to the trustees; and makes it the duty of the Court to enforce the surrender by fine and imprisonment. *Code of* 1888, *Article* 47, *section* 30. What, therefore, would be the significance of a contract made by the insolvent that he would do that which he was obliged to do ? and where would the trustees derive the authority to excuse him when he should do less ? If they could accept a part of his property in lieu of the whole, they could absolve him from obedience to the law.

But it is maintained that the Insolvent Court had approved a contract on this subject between the trustees and Howell. Without stopping to inquire into the limits of the Court's power in this regard, we will see what

Cochrane, *et al. vs.* Bridendolph and Richmond.

action it took on this subject. The trustees in insolvency filed their report in the Insolvent Court, in which they stated that Howell, having refused to deliver to them a large sum of money which he had in his possession, was committed to jail for contempt of Court, and the report then stated "that on the 22nd day of February, 1889, said Howell, through one J. William Shuck, agreed to turn over to your trustees a sum of money exceeding seven thousand dollars, it being fifty per cent. of his then ascertainable · indebtedness, and provided your trustees would not sell his real estate for two years, and give him the opportunity of redeeming the same in the meantime by paying the remaining fifty. cents, to which arrangement the creditors of said Howell then and there assented, it being further agreed that said Howell should pay half the costs of this case;" and that Howell, having purged his contempt, paid over to the trustees the sum of seven thousand and one hundred and sixty-six 91-100 dollars, and also deposited in the hands of Shuck four hundred dollars as security for one-half the costs of the case; and that Lowndes and Percy proposed to buy all the real estate of Howell in Alleghany County, and that they had agreed to give Howell the opportunity of redeeming it within two years, according to the understanding with the trustees. The report further stated that it would be to the interest of the creditors to make the sale and have a speedy settlement, and that the creditors were willing that the sale should be made. The Insolvent Court ratified the sale to Lowndes and Percy. It certainly gave its approval to the action of the trustees, as stated in their report, and gave its sanction to the sale of the real estate on the proposed terms. But we see nothing in the report which purports that Howell was to be excused from surrendering his property to the trustees; and we should require very clear proof before we could believe that a Court would permit a prisoner who was in custody for contempt, to haggle with

Cochrane, *et al. vs.* Bridendolph and Ringgold.

it as to the terms on which he would obey the law. We have not followed the exceptions taken at the trial, but we have stated all the evidence tendered for the purpose of proving the supposed contract with the insolvent, both that which was admitted and that which was rejected, so that we might have a connected view of the whole question. We see nothing which can discharge him from the obligations imposed upon him by the statute. It must be mentioned that two days after Howell had paid to the trustees the money already mentioned, his wife relinquished her dower. in his real estate by deed to the trustees, stating in the deed that "in order to facilitate the discharge by law of said Howell under the insolvent proceedings aforesaid from the payment of his debts" she was willing to execute it. This deed, however, does not make the supposed contract either more or less effectual. The defendant's prayer maintains as its hypothesis that the creditors and trustees agreed between themselves that they would accept the sum of fifty cents in cash on the debts due from Howell, and take the real estate to hold for two years as a pledge that he would pay the balance of his indebtedness, and it sets up this contract as the consideration for the release of the insolvent's property. The defence is varied in the third and fifth pleas, which were ruled bad on demurrer. The third plea avers that the several creditors of Howell agreed with him and the trustees that they would release Howell from all claims against him, &c., &c.; while in the fifth plea the contract is alleged to have been made between the defendant and the respective creditors and the trustees. In whatever way the contract may have been made, it is, in our opinion, invalid. The plaintiff's prayers assumed that there was no contract which could be recognized, and were properly granted.

*Judgment affirmed.*

(Decided 18th April, 1890.)